IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 05–cv–00561–EWN

DANIEL E. GONZALES,

    Plaintiff,

v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

## ORDER AND MEMORANDUM OF DECISION

    This is a social-security benefits appeal under 42 U.S.C. § 405(g) (2005). Plaintiff Daniel E. Gonzales challenges the final decision of the Commissioner of Social Security (the "Commissioner"), denying his application for Social Security Disability Insurance ("SSDI") benefits. Jurisdiction is based on 42 U.S.C. § 405(g).

## FACTS

### 1.  *Medical Evidence*

    Plaintiff was born on November 23, 1956, and was forty-four years old at the onset of his alleged disability. (Admin. R. at 38 [filed May 26, 2005] [hereinafter "Admin. R."].) Plaintiff graduated from high school and college. (*Id.* at 77.) Plaintiff has worked in the vocationally

relevant past as (1) a management trainee at Enterprise Rent-A-Car, (2) an electronics consultant at Sam's Club, (3) a pest control inspector, (4) a construction carpenter, (5) a computer operator at a warehouse, and (6) a flight attendant. (*Id.* at 61.) Plaintiff alleges an inability to work beginning July 15, 2001 through April 2003, due to residual effects of neck and back pain. (*Id.* at 60.)

On October 2, 2000, Plaintiff hurt his neck and back in an automobile accident. (*Id.* at 111.) Gregory W. Berens, M.D., noted that Plaintiff complained of pain in between his shoulder blades and in the upper back. (*Id.* at 110.) He noted that Plaintiff was "slowly getting better, but it is a slow process." (*Id.*) On examination Plaintiff had some tenderness on bony palpation and mild muscular tenderness. (*Id.*)

On January 22, 2001, Dr. Berens evaluated Plaintiff during a follow-up visit. (*Id.* at 107.) Dr. Berens noted that Plaintiff was still not feeling "quite right." (*Id.*) On evaluation Plaintiff had "a lot of tenderness in the neck, shoulders, and in the upper back." (*Id.*) Dr. Berens noted that Plaintiff had about fifty to sixty percent normal range of motion in the neck. (*Id.*) Dr. Berens noted Plaintiff was a "little distressed by everything that has been going on," but, "his mood seems to be pretty good." (*Id.*)

On March 14, 2001, Dr. Berens evaluated Plaintiff during a follow-up visit. (*Id.* at 106.) Dr. Berens noted that "[Plaintiff] comes in stating that he is definitely getting better." (*Id.*) On examination, Plaintiff was not in any distress. (*Id.*) Plaintiff had about eighty percent range of motion in all planes with a little bit of pain at the extremes of motion. (*Id.*) Dr. Berens

recommended that Plaintiff continue with his chiropractic care, continue with massage therapy, and do more active exercises. (*Id.*)

On May 16, 2001, Plaintiff presented to Dr. Berens with increased neck pain related to increased activity at work. (*Id.* at 104.) Dr. Berens noted that Plaintiff had concussive symptoms with insomnia and mild confusion secondary to the motor vehicle accident. (*Id.*) Dr. Berens suggested that Plaintiff start using Vioxx and Skelaxin. (*Id.*) Additionally, Dr. Berens recommended that Plaintiff use Prozac for depression and Percocet as needed for severe pain. (*Id.*)

On June 21, 2001, Plaintiff presented to the emergency room with severe spasms in the right parascapular and rhomboid areas. (*Id.* at 103.) On June 26, 2001, Plaintiff followed up with Dr. Berens. (*Id.*) On examination, Plaintiff had about fifty percent of a normal range of motion, which was a decrease from his last visit. (*Id.*) Dr. Berens noted that he "was not sure why at this time [Plaintiff's] symptoms escalated to this extent, but he is in significant distress." (*Id.*)

On July 2, 2001, Plaintiff presented to Dr. Berens with quite severe pain. (*Id.* at 202.) Dr. Berens noted that Plaintiff was not doing any physical therapy. (*Id.*) On examination, Plaintiff had about a fifty percent decrease in his normal range of motion. (*Id.*) Dr. Berens opined that Plaintiff had "signs of significant strain to the cervical and thoracic spine with increasing spasms and some increasing arm numbness." (*Id.*) Dr. Berens ordered a Magnetic Resonance Imaging ("MRI") scan of the cervical and thoracic spine. (*Id.*)

On July 10, 2001, Plaintiff underwent an MRI. (*Id.* at 118–19.) Plaintiff's MRI revealed (1) moderate degenerative changes of T7–8 and T8–9, (2) mild degenerative changes of T9–10

down to L1–2, (3) disc protrusion at C6–7, (4) mild to moderate degenerative changes of the C6–7, (5) mild to moderate degenerative changes of the C5–6 disc space, (6) a punctate area of abnormal increased T2 signal, and (7) minimal degenerative changes of C3–4 without posterior disc bulge herniation. (*Id.* at 116–19.) Dr. Berens referred Plaintiff to St. Mary-Corwin hospital for cervical epidural steroid injections. (*Id.* at 101.)

On August 15, 2001, Dr. Berens noted that Plaintiff's pain was controlled by medication. (*Id.* at 100.) Dr. Berens noted that Plaintiff was taking Vioxx and Percocet, but he was not presently taking Prozac. (*Id.*) Dr. Berens noted that Plaintiff looked uncomfortable and confused, but he did not recommend that Plaintiff resume Prozac. (*Id.*) Plaintiff had a lot of pain and spasms in his right parascapular muscles and his cervical spine had tenderness. (*Id.*) Dr. Berens diagnosed Plaintiff with cervical disc disease with radicular nerve compression and signs of radiculitis in the right shoulder area. (*Id.*) Dr. Berens noted that Plaintiff is unable to work and he did not think part-time work was appropriate. (*Id.*)

On September 25, 2001, R. Lindsay Lilly, Jr., M.D., conducted a neurosurgical evaluation on Plaintiff. (*Id.* at 130–31.) Plaintiff reported that he had not worked since July 2001. (*Id.* at 130.) Dr. Lilly opined that Plaintiff suffered from right cervical radiculopathy and herniated nucleus pulposus C6–7 lateralized to the right. (*Id.* at 131.) On December 10, 2001, Plaintiff underwent a posterior cervical laminectomy with excision of an intraneural herniation of disc material. (*Id.* at 88.)

On January 14, 2002, Dr. Lilly evaluated Plaintiff. (*Id.* at 127.) Dr. Lilly recommend that Plaintiff switch to a job falling within the sedentary classification "in view of the patient's severe

radiculopathy." (*Id.*)  On February 5, 2002, Plaintiff reported to Dr. Lilly that he had "slight pain," and the Neurontin made him drowsy though it reduced the pain.  (*Id.* at 126.)  Plaintiff reported that he had a numbing sensation on the right upper extremity.  (*Id.*)  Dr. Lilly diagnosed Plaintiff with failed spine surgery syndrome.  (*Id.*)  Dr. Lilly recommended that Plaintiff undergo a cervical MRI.  (*Id.*)

On March 26, 2002, Plaintiff informed Dr. Lilly that he had burning pain in the back of his head and neck radiating to the left scapula and he had headaches.  (*Id.* at 125.)  Plaintiff reported that his right arm "feels great."  (*Id.*)  Plaintiff did not have any symptoms in the extremity itself.  (*Id.*)  On examination there were no palpable spasms.  (*Id.*)  Plaintiff had some slight weakness in the right triceps.  (*Id.*)  Dr. Lilly noted that Plaintiff was attending school and getting a teaching degree.  (*Id.*)

On March 27, 2002, Dr. Berens evaluated Plaintiff.  (*Id.* at 98.)  Plaintiff complained of arm and neck pain and weakness.  (*Id.*)  Dr. Berens noted that Plaintiff "looks to be in pretty good shape.  He is in no acute distress, sitting."  (*Id.*)  Dr. Berens opined that Plaintiff's symptoms seemed to be well controlled after the surgery, "although he has some neck pain and radicular pain."  (*Id.*)  Dr. Berens opined that Plaintiff was capable of sedentary type work.  (*Id.*)

On May 6, 2002, Plaintiff presented to Dr. Berens.  (*Id.* at 96.)  Dr. Berens noted that Plaintiff was "still having aches, pains, tightness in the neck and the low back area."  (*Id.*)  On examination, Dr. Berens noted that Plaintiff continued to have a little bit of pain and a decreased range of motion in the neck.  (*Id.*)  Plaintiff had some discomfort and had fifty percent normal range of motion.  (*Id.*)  Dr. Berens noted that Plaintiff "may be capable of returning to sedentary

type activities." (*Id.*)  Dr. Berens opined that Plaintiff could not return to his past work at Enterprise Rental Car. (*Id.*)

On June 13, 2002, Dr. Lilly evaluated Plaintiff. (*Id.* at 124.)  Plaintiff reported that he had waxing and waning symptoms with neck pain radiating to the scapula. (*Id.*)  Plaintiff reported that he did not need medication on a daily basis. (*Id.*)  On examination, Dr. Lilly noted that Plaintiff had a full range of motion of the cervical spine, slight tenderness on pressure over the trapezius, no palpable spasm, and some slight weakness of the left grip. (*Id.*)

On August 20, 2002, Jose G. Vega, Ph.D., evaluated Plaintiff at the request of the State agency Disability Determination Services ("DDS"). (*Id.* at 132–35.)  Plaintiff reported that he had constant pain and occasionally had difficulty sleeping. (*Id.*)  Plaintiff reported that he was unable to finish his teaching degree because of money issues. (*Id.*)  Plaintiff indicated that he had many "stressors" in his life, including finances and pain. (*Id.* at 133.)  Dr. Vega opined that Plaintiff had "some ongoing depression" associated with his pain disorder. (*Id.* at 134.)  Dr. Vega determined that Plaintiff "would be capable of managing his monthly benefits on his own behalf." (*Id.* at 135.)  Dr. Vega opined that Plaintiff did have some depression and would benefit from some form of treatment, "particularly with pain management." (*Id.*)

On November 15, 2002, Plaintiff presented to Dr. Berens. (*Id.* at 175.)  Dr. Berens noted that Plaintiff's low back had a lot of muscular tenderness. (*Id.* at 175.)  On examination, Plaintiff's gait was a little slow, "but normal in appearance." (*Id.*)  Dr. Berens concluded that Plaintiff's low and mid back pain was from his motor vehicle accident in October 2000. (*Id.*)  Dr.

Berens noted that Plaintiff's "activities are restricted to intermittent bed rest, lying on his side intermittently to relax the back, also, . . . [no] bending or stooping." (*Id.*)

On December 9, 2002, Plaintiff presented to Dr. Lilly and reported increased headaches and neck pain. (*Id.* at 170.) Dr. Lilly noted that Plaintiff had (1) decreased range of lumbar motion, (2) positive straight-leg raising on the left, (3) diminished reflexes in the left lower extremity, (4) normal lower extremity motor functioning, (5) normal muscle tone and bulk, (6) normal sensation, (7) no fasciculations, and (8) normal gait. (*Id.*) Dr. Lilly diagnosed Plaintiff with lumbar radiculopathy. (*Id.* at 171.)

### 2. *Procedural History*

On July 8, 2002, Plaintiff applied for disability insurance benefits. (*Id.* at 13, 38–40.) On September 10, 2002, the Social Security Administration denied his application. (*Id.* at 30–34.) The Administrative Law Judge ("ALJ") held a hearing on Plaintiff's claim on November 18, 2004, at which Plaintiff and a vocational expert testified. (*Id.* at 13–20, 179–209.)

Plaintiff testified that he lives in a house with his daughter and son, ages fifteen and fourteen respectively. (*Id.* at 185.) Plaintiff testified that he is able to take his kids to school and help them with homework. (*Id.*) Plaintiff testified that beginning in July 2001, he could not work due to neck pain and depression for which he took medication beginning in October 2000. (*Id.* at 189–90.) Plaintiff testified that from July 2001 to April 2003, he had difficulty: (1) walking more than thirty minutes at a time, and could not walk more than two hours in one day; (2) sitting more than two to three hours at a time and more than three to four hours per day; (3) standing more than two to three hours; (4) climbing stairs; (5) lifting his arms overhead a significant amount; (6)

kneeling; (7) bending or stooping; (8) lifting and carrying more than ten pounds once in a while; and (9) sleeping more than two hours at a time. (*Id.* at 190–93.) Plaintiff testified that during the relevant time period he could take care of his personal things, such as showering, combing his hair, getting dressed, cooking, doing laundry, making the beds, and driving. (*Id.* at 193–96.) Plaintiff said that he went grocery shopping once a week and his children helped him. (*Id.* at 193.) Plaintiff testified that he was able to take care of his dogs, but he was not able to take the dogs for walks. (*Id.* at 194.) Plaintiff stated that he was incapable of sweeping or mopping because of the repetitive nature of these motions. (*Id.*)

Bruce Magnuson, a rehabilitation counselor, testified as a vocational expert at the hearing. (*Id.* at 204–09.) Magnuson classified Plaintiff's past work as follows: (1) computer operator was skilled and light; (2) carpenter and maintenance person was skilled and medium; (3) retail manager was skilled and light; (4) sales agent was skilled and light; and (5) flight attendant was semiskilled and medium. (*Id.* at 205.) Magnuson testified that an individual of Plaintiff's age and with Plaintiff's education and skill levels could perform unskilled sedentary work, such as an office and telephone clerk. (*Id.* at 206–07.) Magnuson testified that such jobs existed in significant numbers in the regional and national economies. (*Id.* at 207.) Magnuson testified that a person who needed to lie down three to four times a day for thirty minutes at a time would be precluded from all employment. (*Id.* at 208.)

The ALJ issued a decision on November 18, 2004. (*Id.* at 13.) The ALJ determined Plaintiff was not disabled because he retained the residual functional capacity ("RFC") to perform sedentary exertional work. (*Id.* at 17.) The ALJ added that such work exists in significant

numbers in the national economy. (*Id.* at 17–18.)

In reaching his conclusion, the ALJ first found that Plaintiff did not engage in substantial gainful activity from July 15, 2001 through March 2003. (*Id.* at 19.) Next, the ALJ determined that Plaintiff has cervical disc disease, status post discectomy, and fusion. (*Id.*) While these impairments are "severe," the ALJ determined that the impairments do not meet or equal the criteria of any of the established listings. (*Id.*) Next, the ALJ determined Plaintiff's RFC. In determining Plaintiff's RFC, the ALJ found that Plaintiff was not credible because Plaintiff's allegations regarding his impairments were inconsistent with the medical and other evidence in the record. (*Id.* at 16.) Based on the evidence presented to him, the ALJ issued his RFC determination. The ALJ concluded that during the period from July 15, 2001 through March 2003 "[Plaintiff] had the [RFC] to perform sedentary exertional work, but that he was limited to only frequent overhead reaching. Sedentary work involves lifting no more than [ten] pounds at a time, standing and walking occasionally, and sitting the remainder of the time." (*Id.* at 17.) In accord with this RFC, the ALJ determined that Plaintiff could not perform his past relevant work. (*Id.*) The ALJ determined that there are a significant number of jobs in the regional and national economy that Plaintiff could still perform, and therefore the ALJ found that Plaintiff was not disabled. (*Id.* at 18.)

Plaintiff appealed this decision, and on February 4, 2005, the Appeals Council declined to review the ALJ's determination. (*Id.* at 5–8.) Thus, the ALJ's decision became the Commissioner's final decision for the purposes of the present appeal. Plaintiff filed a complaint in this court on March 25, 2005, challenging the Commissioner's denial of disability insurance

benefits.  (Compl. [filed Mar. 25, 2005].)

## ANALYSIS

### *1.  Standard of Review*

Section 405(g) of the Social Security Act establishes the scope of this court's review of the Commissioner's denial of disability insurance benefits.  *See* 42 U.S.C. § 1383(c)(3) (2004) (incorporating review provisions of 42 U.S.C. § 405[g]).  Section 405(g) provides, in relevant part, that

> [t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied by the Commissioner of Social Security or a decision is rendered under subsection (b) of this section which is adverse to an individual who was a party to the hearing before the Commissioner of Social Security, because of failure of the claimant or such individual to submit proof in conformity with any regulation prescribed under subsection (a) of this section, the court shall review only the question of conformity with such regulations and the validity of such regulations.

42 U.S.C.A. § 405(g).  Thus, this court's review is limited to determining whether the record as a whole contains substantial evidence supporting the Commissioner's decision.  *See id.*; *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992).  The court must uphold the Commissioner's decision if it is supported by substantial evidence.  *See Dollar v. Bowen*, 821 F.2d 530, 532 (10th Cir. 1987).  This court cannot re-weigh the evidence nor substitute its judgment for that of the ALJ.  *Jordan v. Heckler*, 835 F.2d 1314, 1316 (10th Cir. 1987).  That does not mean, however, that my review is merely cursory.  To find that the ALJ's decision is supported by substantial evidence, the record must include sufficient relevant evidence that a reasonable person might deem adequate to support the ultimate conclusion.  *Frey v. Bowen*,

816 F.2d 508, 512 (10th Cir. 1987). A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it. *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). The ALJ's decision is also subject to reversal for application of the wrong legal standard. *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Frey*, 816 F.2d at 512.

## *2.     Evaluation of Disability*

The qualifications for disability insurance benefits under the Social Security Act are that the claimant meets the insured status requirements, is less than sixty-five years of age, and is under a "disability." *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). The Social Security Act defines a disability as an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (2004). In proving his disability, a plaintiff must make a *prima facie* showing that he is unable to return to prior work he has performed. *Huston v. Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988). Once the claimant meets that burden, the Commissioner must show that the claimant can do other work activities and that the national economy provides a significant number of jobs which the claimant could perform. *Frey,* 816 F.2d at 512.

The Commissioner has established a five-step process to determine whether a claimant qualifies for disability-insurance benefits. *See Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987) (describing five-step analysis); 20 C.F.R. § 404.1520 (2004). A claimant may be declared

disabled or not disabled at any step; and, upon such a determination, the subsequent steps may be disregarded. *See Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988); 20 C.F.R. § 404.1520(a). First, the claimant must demonstrate that he is not currently involved in any substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the claimant must show a medically severe impairment (or combination of impairments) which limits his physical or mental ability to do basic work activities. *Id.* § 404.1520(c). At the third step, if the impairment matches or is equivalent to established listings, then the claimant is judged conclusively disabled. 20 C.F.R. § 404.1520(d). If the claimant's impairments are not equivalent to the listings, the analysis proceeds to the fourth step. At this stage, the claimant must show that the impairment prevents him from performing work he has performed in the past. *See Williams,* 844 F.2d at 751 (citations omitted). If the claimant is able to perform his previous work, he is not disabled. *Id.*; 20 C.F.R. § 404.1520(e). This step requires a three phase analysis.

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), and in the second phase, he must determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one. At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (citations omitted). The fifth step requires the Commissioner to demonstrate that the claimant has the RFC to perform other work based on the claimant's age, education, past work experience, and there is availability of that type of work in the national economy. *See Williams*, 844 F.2d at 751; 20 C.F.R. § 404.1520(f).

### *3. Disability Determination*

Plaintiff alleges that the ALJ committed three errors. (Pl.'s Opening Br. at 4 [filed July 25, 2005] [hereinafter "Pl.'s Br."].) Specifically, Plaintiff contends that: (1) the ALJ had no legal or factual basis for disregarding the treating physician's opinion of physical restrictions; (2) the ALJ did not have a proper basis for disregarding Plaintiff's testimony regarding his restrictions; and (3) the ALJ's RFC determination is not supported by any evidence. (*Id.* at 6–15.) I need only address the first argument.

Plaintiff contends that the ALJ erred in disregarding Dr. Berens' opinion that Plaintiff "could work no more than [six] hours per day in a job requiring up to four hours of sitting and two hours on his feet." (*Id.* at 7.) Dr. Berens was one of two physicians who treated Plaintiff during the relevant time period.

The ALJ must give substantial weight to the evidence and opinion of Plaintiff's treating physician, unless good cause is shown for rejecting it. *Frey*, 816 F.2d at 513; *Reyes v. Bowen*, 845 F.2d 242, 244–45 (10th Cir. 1988). "If the opinion of [Plaintiff's] physician is to be disregarded, specific, legitimate reasons for this action must be set forth." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984); *Reyes*, 845 F.2d at 245.

Here, the ALJ did not give specific, legitimate reasons for rejecting Dr. Berens' opinion. As stated above, the ALJ determined that Plaintiff had the RFC to "perform sedentary exertional work, but that he was limited to only frequent overhead reaching." (Admin. R. at 17.) The ALJ defined sedentary work as "lifting no more than [ten] pounds at a time, standing and walking occasionally, and sitting the remainder of the time." (*Id.*) Dr. Berens opined that Plaintiff "could

work no more than [six] hours per day in a job requiring up to four hours of sitting and two hours on his feet." (Pl.'s Br. at 7.) Dr. Berens' assessment is almost identical to that of the ALJ, but the ALJ did not explain the sitting restriction as thoroughly as Dr. Berens. Instead, the ALJ accorded little weight to this portion of Dr. Berens' assessment and explained "Dr. Berens has placed rather extreme functional limitations on [Plaintiff] that are not well supported by the medical signs and findings, or even Dr. Berens' own observations made in 2002." (Admin. R. at 17.) The ALJ's reason for rejecting Dr. Berens' opinion is vague. The ALJ dismissed the sitting restrictions as "extreme," but, did not offer any explanation. Further, the ALJ stated that Dr. Berens' restrictions were inconsistent with "Dr. Berens' own observations made in 2002." (*Id.* at 17.) The ALJ does not offer any explanation for this statement nor does the ALJ set forth the specific observations that conflict with Dr. Berens' opinion. The ALJ cannot dismiss Dr. Berens' opinion by mere conclusory statements. *See Frey*, 816 F.2d at 513. The ALJ must articulate specific reasons for rejecting Dr. Berens' opinion or explain how those opinions were inconsistent with other medical evidence. *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004). This is so especially in light of the fact that Dr. Berens' opinion seems consistent with the ALJ's RFC, despite the fact that the ALJ did not want to extend Dr. Berens' sitting restriction.[1] Accordingly,

---

[1] The ALJ's rejection of Dr. Berens' sitting restriction is crucial to Plaintiff's disability determination. Specifically, Magnuson, the vocational expert, testified that a person who could only sit for four hours and work from five to six hours in a work day was precluded from all employment. (*Id.* at 208.) Thus, according to Magnuson, if the ALJ were to adopt Dr. Berens' sitting restriction, Plaintiff would not be able to work during the relevant time period and would be conclusively disabled.

the ALJ's RFC was not appropriate because it did not provide specific reasons for rejecting the opinion of Dr. Berens — one of two doctors to evaluate Plaintiff during the relevant time period.

Additionally, the ALJ's RFC is not complete.

> [I]f an ALJ finds that a claimant cannot perform the full range of work in a
> particular exertional category, an ALJ's description of his findings in his . . .
> written decision must be particularly precise.  For example, . . . the description of
> an RFC in cases in which a claimant can perform less than the full range of work must be specific as to the

*Vail v. Barnhart*, 84 Fed. Appx. 1, 4–5 (10th Cir. 2003).  As stated above, the ALJ's RFC determination defined "sedentary work" in relevant part as "standing and walking occasionally, and sitting the remainder of the time." (Admin. R. at 17.)  Although the ALJ recognizes that Plaintiff does have sitting and standing limitations, the ALJ's RFC determination is not specific with respect to these restrictions.  *See Vail*, 84 Fed. Appx. at 5.  Thus, the ALJ's RFC is incomplete.

### 4. *Conclusions*

Based on the foregoing it is therefore:

ORDERED that the Commissioner's decision is REVERSED and REMANDED for proceedings consistent with this opinion.

Dated this 5th day of January, 2006.

BY THE COURT:

s/ Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge